* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease and an employer-employee relationship existed between them. The above-designated carrier was on the risk at the time of the alleged injury.
4. Plaintiff alleges that he suffered a compensable injury by accident or specific traumatic incident on or about October 14, 2003. Defendants have denied the same pursuant to the Form 61 filed in this case.
5. At the time of the alleged injury, plaintiff's average weekly wage was $1,138.93.
6. Plaintiff seeks no indemnity benefits for periods prior to June 10, 2005, the last date on which he alleges that he last worked or earned wages.
 ISSUES
1. Plaintiff's issues for determination are as follows:
 a. Whether plaintiff sustained a compensable injury by accident or specific traumatic incident on or about October 14, 2003?
 b. If so, to what benefits is he entitled?
2. Defendants' proposed issues for determination are as follows:
 a. Whether plaintiff sustained a compensable injury by accident or specific traumatic incident on or about October 14, 2003?
 b. If so, whether plaintiff suffered any disability as a result of the alleged incident on October 14, 2003?
 c. Whether plaintiff met his burden to show that his current back condition is causally related to the alleged incident of October 14, 2003? *Page 3 
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff testified that he had periodic flare-ups of lower back pain since he suffered a football injury in high school and has received treatment for these flare-ups from chiropractors and massage therapists.
2. In June 2001, plaintiff began employment with defendant-employer, first as an assistant manager and later as a manager. His duties included overseeing employees, writing schedules, maintaining quality of food and service, meeting guests, expediting food orders, carrying trays to customers and other related matters.
3. At the hearing before the Deputy Commissioner, plaintiff testified that on October 14, 2003, he was performing his usual duties during lunchtime, when he slipped and fell on some liquid on the floor as he was walking through the bar. He testified that he twisted around, trying to prevent a fall, but could not, and fell on his back and right side. Plaintiff asserted that he could not move or get up immediately after the fall.
4. Plaintiff testified that bartender Jason Issermoyer came over to him soon after he fell and carried him to the office, placing him on the floor.
5. Plaintiff put ice on his back and tried to reach his doctor without success. While he was on the floor, defendant-employer's chef, Christian Scott, came into the office and saw plaintiff on the floor. Ms. Scott suggested they call Crystal Flygler, a masseuse who also worked *Page 4 
for defendant-employer. Ms. Flygler massaged plaintiff's back for about an hour that day. At the time, plaintiff believed that he had likely just pulled a muscle or strained his back.
6. Christian Scott testified that while she did not witness the actual fall on October 14, 2003, she came into the office and saw plaintiff on the floor with Mr. Issermoyer seated nearby. Ms. Scott testified that Mr. Issermoyer told her "Russell fell in the bar."
7. At hearing before the Deputy Commissioner, Mr. Issermoyer testified that he was working on October 14, 2003, but that he did not remember seeing plaintiff fall. He said he had no recollection of helping plaintiff get up off the floor or helping him go to the office. He testified that he thought that if such a thing had happened that he would have remembered it.
8. At the hearing, defendant-employer's Executive Assistant, Elizabeth Wallace testified that plaintiff called her and said that something had popped in his back and he wanted a referral to a chiropractor or massage therapist. Ms. Wallace testified that she asked him if he hurt his back at work, and that he was unclear about it.
9. According to the Form 19, Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission dated October 15, 2003, completed by plaintiff and signed by Gary Itenson, Assistant General Manager, plaintiff was walking on the tile floor at work at 1:45 p.m. on Tuesday, October 14, 2003, when something "snapped or popped" in his lower back causing pain. Ms. Wallace testified that she sent the form to the insurance company. The incident was not investigated thoroughly because plaintiff sought chiropractic treatment on his own, did not miss any time from work, and voluntarily terminated his employment approximately one month later, on November 24, 2003. Ms. Wallace testified that she did not hear about a slip and fall until the summer of 2004.
10. Defendant-employer's Operating Partner, Dean Ogan testified that the only notice he had of any incident was on the Form 19, which did not reference a slip and fall. He testified that he did not hear about a slip and fall until the summer of 2004. *Page 5 
11. On October 15, 2003, plaintiff sought treatment from a chiropractor, Allen Ashforth. Plaintiff told Dr. Ashforth that his pain had started the day before when he bent over and felt a sharp stabbing pain. Plaintiff did not say the incident occurred at work, and Dr. Ashforth's record specifically indicates that the problem was not work related.
12. Plaintiff also testified that after a few weeks of trying to do his job despite lack of improvement of his back symptoms, he informed Dean Ogan and Kevin Sommers, defendant-employer's owners, that he was resigning because he could not perform his job duties due to his workplace injury of October 14, 2003. He continued to work through the end of November 2003 to see defendant-employer through a busy period and to train a replacement.
13. Plaintiff, Ms. Scott and Mr. Carlyle each testified that before the injury date, plaintiff could perform the normal duties of his job, but that afterward, he could not do many tasks, and spent time lying on the floor in the office, which he had not previously done.
14. Plaintiff testified that a secondary reason he wished to resign was that Dean Ogan and Kevin Sommers had brought to his attention an accounting problem that made him feel uncomfortable. However, that matter was later resolved.
15. On December 4, 2003, plaintiff presented to Dr. Shona Martin at Wake Internal Medicine Consultants. Dr. Martin noted that plaintiff's chief complaint was lower back pain and that he had a long history of intermittent lower back pain.
16. Plaintiff is also the part owner of the Deli Den, a restaurant in Florida. Plaintiff testified that after he could no longer work at defendant-employer's restaurant, he worked as a *Page 6 
consultant at the Deli Den. He stopped working at the Florida restaurant on June 10, 2005, because he could not perform the physical duties required of him and because his family remained in Raleigh.
17. On August 9, 2004, plaintiff presented to a certified physician's assistant, Deborah Reid, at Wake Internal Medicine and Consultants. This medical report contains the first indication that plaintiff stated his lower back pain was the result of a fall at work in October 2003. X-rays taken of plaintiff's lumbar spine were read as normal. On August 20, 2004, an MRI of plaintiff's lumbar spine taken at Rex Healthcare showed mild degenerative changes, including disc bulges at L3-4, L4-5, and L5-S1.
18. Plaintiff filed a Form 18, Notice of Accident to Employer, on August 20, 2004, which indicated that he injured his back as the result of a slip and fall at work on October 14, 2003. The Form 18 stated, "Mr. Solovay was walking through the restaurant on the tile floor in the bar area and slipped in a pool of water that had apparently come through a leak in the ceiling."
19. Defendants denied the compensability of the injury pursuant to a Form 61, Denial of Workers' Compensation Claim.
20. On September 20, 2004, Dr. Russell R. Margraf evaluated plaintiff. Dr. Margraf noted that an MRI scan of the lumbar spine showed minimal broad-based disc bulging at L4-L5 and L5-S1, but little in the way of foraminal narrowing at those levels. Dr. Margraf's overall impression was that of mild degenerative changes in the lumbar spine with mechanical back pain. Dr. Margraf noted that he did not see anything that would lend itself to operative intervention. He recommended conservative treatment and did not schedule a follow-up visit. *Page 7 
21. On June 7, 2005, plaintiff presented to Dr. Harold L. Dalton at the South Florida Spine Clinic in Ft. Lauderdale. Dr. Dalton ordered a new MRI, which revealed a small to moderate sized extruded central and right-sided disc herniation at L3-4 leading to impression upon the right and central ventral sac and an associated annular tear. In addition, there was a small to moderate sized far right lateral disc herniation at L3-4, leading to compromise of the right L3-4 foramen, and impression upon the right L3 nerve root. There were also disc bulges at L4-5 and L5-S1, but no canal or foraminal stenosis at either of those levels.
22. On August 1, 2005, plaintiff returned to Dr. Margraf's office in Raleigh for re-evaluation. Upon review of the 2005 MRI, Dr. Margraf opined that plaintiff had mechanical back pain associated with an annular tear at L3-L4 with a limited degree of radicular symptoms. Dr. Margraf recommended an epidural steroid injection at L3-L4, and, if that was ineffective, he stated he would consider the possibility of lumbar discography.
23. On August 8, 2005, plaintiff presented to Dr. Leonard D. Nelson, Jr. Dr. Nelson reviewed plaintiff's June 2005 MRI and noted that plaintiff had degenerative disc disease at L3-4 and L5-S1 and a herniated disc at L3-L4. Dr. Nelson opined that plaintiff could benefit from a fusion at L3-4, and that epidural steroid injections would be a good diagnostic tool.
24. On October 21, 2005, plaintiff underwent a discogram, which demonstrated concordant pain at L3-4. Dr. Margraf indicated that he would treat plaintiff if and when he wanted to discuss the possibility of a L3-4 fusion with interbody device.
25. On November 7, 2005, plaintiff returned to Dr. Margraf to again discuss the discogram findings. Dr. Margraf stated that plaintiff had two diseased segments, but that his pain correlated to L3-4. Dr. Margraf recommended that plaintiff wear a lumbar corset during painful periods and put off surgery for as long as possible. *Page 8 
26. Both doctors who testified felt that plaintiff's back condition was consistent with degenerative disc disease rather than a fall. Dr. Margraf testified that plaintiff had pre-existing two-segment lumbar degenerative disc disease, which could not have been caused by a fall. Dr. Margraf also opined that if plaintiff had sustained a fall that was temporally associated with the onset of his symptoms, then that fall would probably have contributed to the exacerbation of plaintiff's degenerative disc disease. However, Dr. Margraf had no opinion on whether any such contribution would have been significant. Regarding plaintiff's capacity to work, Dr. Margraf stated only that he would have given plaintiff a 30-pound lifting restriction.
27. Dr. Nelson testified that all of plaintiff's back problems appeared degenerative in nature, both on the 2004 and 2005 MRI's and that there was no evidence of a traumatic occurrence, such as a fracture or bone bruise. Dr. Nelson would not opine on whether the alleged fall caused or aggravated plaintiff's degenerative disc disease or on plaintiff's capacity to work.
28. Plaintiff has failed to prove by the greater weight of the evidence that on October 14, 2003, he sustained an injury by accident or a specific traumatic incident arising out of and in the course of his employment with defendant-employer.
29. There is insufficient medical evidence of record from which to prove by the greater weight that plaintiff's back complaints were causally related to an October 14, 2003 incident or that the incident significantly aggravated a pre-existing back condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that on or about October 14, 2003, his back complaints were causally related to an October 14, 2003 incident or that the incident significantly aggravated a pre-existing back condition.
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the provisions of the North Carolina Workers' Compensation Act, plaintiff's claim must be and is hereby denied.
2. Defendants shall bear the costs.
This the __ day of May 2007.
 S/_______________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10 
 S/_______________ BUCK LATTIMORE CHAIRMAN *Page 1